NORBERT C. CHAPP AND HARTKE–CHAPP ENTERPRISES, INC., APPELLANTS, *v.* ELMER D. PETERSON AND AUDREY M. PETERSON, HUSBAND AND WIFE, RESPONDENTS.

No. 4779

December 7, 1964                    397 P.2d 5

*W. Bruce Beckley,* of Las Vegas, for Appellants.

*John Peter Lee,* of Las Vegas, for Respondents.

**OPINION**

By the Court, McNamee, J.:

Appellants, as plaintiffs, brought this action for specific performance of an agreement to purchase real

property which they allege that the respondents, as sellers, breached. In the alternative they seek damages for the breach. Hereinafter the appellants as well as the respondents will be referred to in the singular.

On August 1, 1962 the respondent executed escrow instructions to Pioneer Title Insurance Company of Nevada as escrow agent wherein he negotiated for the sale of the property in question to Norbert C. Chapp, or his nominee. The sale price was for $85,000, $24,000 of which was to constitute the down payment and the balance was to be paid in installments of $500 *or more*. Chapp signed the instructions as buyer. This escrow was cancelled by mutual consent in November 1962. Thereafter the parties had two telephone conversations regarding the sale of the land. As a result of these conversations respondent sent a letter to Pioneer Title which stated in substance the purchase price of $85,000, the down payment to be $24,000, the balance of $61,000 to be represented by a note secured by a trust deed in the sum of $61,000 with interest at the rate of 6½ percent. During the balance of 1963 only monthly payments of interest were to be made commencing 30 days after the close of escrow. In 1964 payments were to be $500 per month including 6½ percent interest; the agreement to be completed not earlier than January 2, 1963 and not later than January 28, 1963. Although the typed part of the letter fails to mention the name of the buyer at the top of the letter, apparently in the handwriting of Elmer D. Peterson, is the following:

"Attn. Norbert C. Chapp, Hartke Realty
　　2606 E. College Ave.
　　N. Las Vegas"

The last paragraph of the letter states:

"Mail two copies of the escrow instruction to seller which are signed by the buyer and which acknowledge receipt of the above mentioned $5,000 [the amount of the $24,000 down payment to be deposited by the buyer at the time of the opening of the escrow], seller will sign and return one copy and retain the other for his file."

Pursuant to said letter, Pioneer Title reopened the

escrow and prepared written instructions in strict accordance with the letter with the following exceptions: The deferred principal and accruing interest were to be paid in monthly installments of $500 *or more;* the buyer was designated as Hartke-Chapp Enterprises, Inc., or nominee.

Hartke-Chapp Enterprises, Inc., signed the escrow instructions. They were sent to respondent who, after receipt of same, refused to sign them and wrote Pioneer Title by letter dated December 19, 1962, "This property is no longer on the market so I am returning all papers."

On January 14, 1963 this action was filed followed by respondent's answer which denies any contract, oral or written, although he admits the execution of the letter to the escrow agent and that the escrow agent sent them escrow instructions executed by appellant. The answer contains no affirmative defense. The parties stipulated that on December 17, 1962 respondent entered into a written agreement with one Peelen for the sale to him of part of the property involved, which provided for the deferred payments to be at the rate of $1,500 *or more* every three months.

On October 24, 1963 appellant moved to amend his complaint by alleging that it was the custom and usage in the Clark County real estate business, which custom and usage was known to respondent "for buyers, sellers, brokers, and escrow companies, to assume and understand that a designated installment payment, unless specifically otherwise provided or stipulated, could be prepaid by the use of the words 'or more' in contracts and agreements to purchase." This motion was later denied.

After a trial, the court filed a written decision stating that the respondent was under no obligation to execute the escrow papers because they contained the words "or more" contrary to the explicit instructions given the title company by the respondent. The court did concede however that the letter from the respondent to the escrow agent would suffice "to take care of the statute of frauds although it is not a contract as such between the plaintiffs and the defendants. It is merely

a direction to an escrow agent to prepare the documents necessary to consummate the sale in accordance with the explicit directions given. This the title company did not do."

Findings of fact and conclusions of law were filed in accordance with said written decision, and judgment was entered in favor of the respondent.

A motion was then made to amend the findings by stating that the parties prior to the execution of the written papers had in November of 1962 reached an oral agreement which had provided for payments of $500 or more per month; that although Mrs. Peterson had not signed any writing, she at all times had knowledge of the deal and acquiesced and approved of all of her husband's actions; that plaintiffs at all times would have purchased the property under an agreement for monthly installment payments limited to $500 per month.

The motion to amend the findings of fact, conclusions of law, and decision was denied. Appeal is from the judgment and from the order denying the motion to amend.

Appellant contends on appeal that an oral contract for the sale of the land had been entered into between the parties and that because of the letter from Peterson to the escrow holder the statute of frauds was satisfied and the oral contract thereby became enforceable.

Whether or not there was ever a meeting of the minds with respect to the terms of the contract for sale during the telephone conversations need not be considered. The trial court in its written decision apparently determined from conflicting evidence that there had been no meeting of the minds. This determination is supported by respondent's letter of instructions to the title company which did not contain the words "or more."

Appellant next contends that respondent's letter of instructions to the escrow agent constitutes an offer on his part to sell the land to appellant in accordance with the terms of said letter and that the appellant

accepted said offer by signing said instructions and returning them to respondent; that the insertion in the escrow instructions of the words "or more" was in accordance with local customs and usage known by respondent to exist[1] and therefore there was no conditional acceptance which would negate a completed contract.

Evidence of local custom and usage in this respect was introduced through the testimony of Norma Wadsworth, an escrow officer of Pioneer Title, who testified that her company, which did 50 percent of the escrow work in Clark County, used the words "or more" in 95 percent of their escrows to permit the buyer to accelerate payment of a balance due on a purchase price unless expressly directed otherwise. We are of the opinion that the trial court properly refused to consider this testimony sufficient to constitute a showing of such established custom and usage existing in the county limited as it was to the custom and usage of Pioneer Title.[2]

A custom to be enforceable as part of a written contract "must be certain, continuous, and uniform. It must be so uniform that the parties concerned must be presumed to have known of the custom and acted in reference to it, or, as has been said, so fixed that those engaged in the business may know what to meet. Conversely, lack of definiteness is fatal to the existence of a custom, hence, evidence of a loose usage for an indefinite period, limited to a few persons in one particular locality, will not suffice in a court of law." 55 Am.Jur., Usages and Customs § 10 (1946).

If we consider the letter of instructions an offer by respondent to sell, was the signing by appellant of the

---

[1] The record does not show affirmatively that respondent knew of any such custom. See 55 Colum.L.Rev. 1199–1200 (1955).

[2] Norma Wadsworth when asked, "Now, is this custom and usage invariably followed?" answered, "Well, not always."

escrow instructions which contained the words "or more" a substantial acceptance of that offer? Appellant concedes that it would not be a substantial acceptance in the absence of sufficient evidence to show that it was the local custom and usage to insert the words "or more" in such sales agreements. As hereinbefore pointed out sufficient evidence of a custom or usage was not presented.

In discussing the matter of custom and usage, we do not intend to hold by implication or otherwise that in a case where there is an offer and a conditional acceptance which constitutes a counter-offer, evidence of custom and usage is admissible to convert the counter-offer into an acceptance.

In the absence of a provision for prepayment of an installment note the creditor has the right to refuse to accept payment prior to maturity of the principal except in the installments expressly provided for by the note. McCarty v. Mellinkoff, 118 Cal.App. 11, 4 P.2d 595; Fowler v. Courtemanche, 202 Or. 413, 274 P.2d 258. A reason for this rule is that the creditor in addition to his right to the repayment of the loan with interest possesses also the right to the interest contemplated by the parties which would accrue if the principal payments are made in the manner provided for by the note. Another reason can be attributed to the income tax situation which could be prejudicial to a creditor if he is precluded from spreading payments over a period of time most advantageous to him.

The title company by inserting the words "or more" substantially changed the written directions to it from the respondent. In signing the escrow instructions appellant accepted a nonexistent offer. As a result the parties did not enter into an enforceable contract of sale.

In returning the escrow papers unsigned to Pioneer Title respondent gave as his reason that the property was no longer on the market. It was only after this

action was commenced that respondent stated (in his pretrial deposition) that his reason for not completing the sale was because of the variance between his instructions to the title company and the escrow instructions prepared therefrom. For this reason appellant contends that respondent is now estopped from shifting his position and defending upon objections to certain words of acceptance which might have been corrected if called to the buyer's attention before expiration of his period of acceptance. We answer this contention simply by stating that the letter of December 19, 1962 from respondent to Pioneer Title wherein he stated "this property is no longer on the market" is not necessarily inconsistent with his present position that no binding contract had resulted from negotiations between the parties. Unless such a contract came into existence within the time provided the seller was at liberty to withdraw the property from the market.

Affirmed.

BADT, C. J., and THOMPSON, J., concur.